Nancy Lynn Schnack ETTER,
Appellant,

v.

The STATE of Texas, Appellee.

No. 314–82.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 31, 1984.

Edward A. Mallett, Houston, James M. Pape, San Marcos, David R. Bires, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty.; Calvin A. Hartmann and Don Stricklin, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of murder with punishment assessed by the jury at fifty (50) years' imprisonment. The co-defendant, Richard Glen Morgan, who was jointly tried, was acquitted.

On appeal appellant Etter complained the trial court erred in overruling the motion for new trial based, inter alia, on the "newly-available" testimony of the co-defendant Morgan who did not testify at the trial on the merits. She also urged error on the part of the trial court in overruling Morgan's motion for instructed verdict of not guilty.

The Houston [14th] Court of Appeals in a panel opinion affirmed the conviction overruling the two grounds of error. *Etter v. State*, 629 S.W.2d 839 (Tex.App.-Houston [14th] 1982). One justice dissented. We granted appellant's petition for discretionary review to determine the correctness of the appellate decision below.

Appellant Etter and co-defendant Morgan were jointly tried for the murder of David William Holder.

A brief recitation of the facts will place appellant's contentions in proper perspective.

Thomas Morse testified that he rented a house at 1011 Wisconsin in Houston from Nancy Etter, the appellant. On July 27, 1978, about 8 a.m., appellant and Richard Morgan arrived at the house, and Morse admitted them. The three smoked a marihuana cigarette. Morse's "half-brother,"[1] David William Holder, was still in his bedroom.

Morse stated he discussed with appellant the purchase of the house and, during the course of the conversation, the deceased

---

1. Morse referred to the deceased as his "half-brother," explaining that he (Morse) had been adopted and his adoptive parents had also taken the deceased to raise, although he was not formally adopted. Morse had allowed the deceased to move in with him sometime before the alleged offense.

entered the room and told Morse that the appellant was asking too much money for the house, and they could build a house for less.

According to Morse a heated argument ensued, and the appellant pulled a handgun from the waist of her bluejeans, directing it first at him and then at the deceased Holder. As Morse turned to leave, appellant fired, hitting the deceased. As Morse struggled to open the front door, appellant fired, striking the door. Morse ran from the house and appellant followed and fired three shots at him as he ran. He fled to the office of an air conditioning business. The police were called.

Kay Coleman, a neighbor, testified she heard a "pop" and as she looked out a window of her house she saw Morse running from the house in question and saw appellant come out of the house and point a gun at the fleeing Morse. Coleman then went to a bedroom with her child.

Other State's evidence showed that the police arrived and found the body of Holder, a .32 cal. pistol without a clip, some bullets and some spent bullet cases in the house. There was a bullet hole in the front door. The autopsy showed the deceased had been shot twice and died from gunshot wounds to the neck. A firearm expert testified he was of the opinion that the .32 cal. pistol found was the murder weapon.

Dale and Nita Beckham testified they saw appellant and Morgan in Sonora on August 3, 1978 traveling by motorcycle. They stayed overnight with the Beckhams and told the Beckhams they were on the way to Las Vegas, Nevada. When told by the Beckhams they were wanted by the police, they acknowledged the fact and appellant explained it was due to a "mix up" in San Angelo over an air conditioner.

Other evidence shows appellant and Morgan were surrendered into custody by their attorney on August 12, 1978, in Houston.

The appellant testified she and Morgan had gone to the house at 1011 Wisconsin on July 27, 1978 to move some of her personal belongings in the house. Morse admitted them. Morse smoked a marihuana cigarette while they talked, but she declined. She complained about the conditions of the house and the lack of repairs Morse had promised to make. She complained about Morse growing marihuana in the back yard, and about keeping a handgun she had seen on a bar in the den the day before. She also complained about the damage Morse's dog had done to the house. They discussed the sale of the house. Morgan remained seated on a couch in the den during the entire episode.

Appellant related that during the discussion with Morse, the deceased, whom she had never met, entered the room. An argument ensued between Morse and the deceased, and appellant told them they should move out of the house. At this Morse and the deceased began to direct abusive language at her. The deceased then began to advance toward the appellant and the handgun on the top of the bar.

Appellant picked up the handgun and told the deceased to stop. At this point Morse hit her from behind and the gun fired, hitting Holder. From the blow she fell forward. She remembered the gun firing once and perhaps more times as she couldn't argue with the medical examiner. She didn't know if she shot at Morse at the door or later. She recalled going onto the porch with the gun in her hand yelling for an ambulance. She re-entered the house and threw the gun down, but denied taking the clip. Appellant related she and Morgan left the house to contact her attorney. Being unable to contact him, they left Houston and eventually got as far as Sonora before returning to Houston and surrendering to authorities about two weeks later. Appellant thus admitted flight on her part and that of Morgan.

After appellant testified, her counsel called the co-defendant Morgan as a witness but his counsel refused to allow him to testify.

The jury convicted the appellant and acquitted Morgan at the guilt stage of the trial.

At the hearing on the motion for new trial, Morgan testified. His version generally corroborated appellant's version of the shooting. In some respects his testimony about the shots was vague. His version was not as clear as the appellant's version as to what had transpired. Appellant argued that Morgan's testimony was "newly available" and she was entitled to a new trial. The court overruled the motion for new trial.

In the Court of Appeals and in this Court appellant relies upon *Whitmore v. State*, 570 S.W.2d 889 (Tex.Cr.App.1978) (opinion on appellant's motion for rehearing), a capital case where the death penalty was imposed. There this Court held that a person's testimony, which had been unavailable at the defendant's trial due to his privilege against self-incrimination, but became available because that person was subsequently acquitted of the same charge in another trial, and which testimony would probably bring about a different result at another trial of the defendant, was "newly available" evidence entitling the defendant to a new trial. It was further held that the fact the statutorily allowed time for filing of a motion for new trial by defendant had expired before such other person was acquitted did not preclude the defendant from obtaining a new trial on the basis of the "newly available" evidence.

After the granting of Whitmore's motion for rehearing and the reversal which followed, the State's motion for leave to file a motion for rehearing was granted. The personnel of the Court having been enlarged by constitutional amendment, the Court split four to four on the State's motion for rehearing in *Whitmore* with Judge Vollers disqualifying himself. The Governor then appointed the Honorable Thomas M. Reavley as Special Judge in the case. In a concurring opinion, Judge Reavley agreed with four judges in overruling the State's motion for rehearing, stating his own reasons, and particularly noting that the death penalty was involved. Needless to say, the Court was badly split. *Whitmore* is factually distinguishable from the instant case in many respects.

In the instant case the Court of Appeals, however, set out the requirements for obtaining a new trial upon newly discovered or "newly acquired" evidence mentioned in *Whitmore*. These are:

1. The newly-discovered evidence was unknown to the movant at the time of his trial;

2. The movant's failure to discover the evidence was not due to his want of diligence.

3. The materiality of the evidence is such as would probably bring about a different result in another trial; and

4. The evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching.

According to the testimony of Morgan's attorney, he and appellant's counsel had, prior to trial, discussed their clients' testimony and knew the versions were similar. Thus Morgan's evidence was known at the time of trial. If it can be argued the evidence of Morgan in fact became "newly available" after his acquittal and thus also "newly known," the first requirement of the test was met in the instant case.

However, it does not appear that appellant met the diligence requirement as noted by the Court of Appeals. He filed no motion for severance seeking to have Morgan tried first so that he would be available as a witness at her trial. As observed, the nature of Morgan's testimony was in fact known. Appellant argues that Morgan filed a severance motion which was overruled, and that it would have been useless for her to have also filed such a motion. This assertion in the brief is not supported by the record. If Morgan filed a severance motion, it is not in this appellate record nor is the basis of any such motion reflected.

Further, appellant did attempt to call Morgan as a witness, but after an unrecorded bench conference, Morgan's attorney stated to the court (not the jury) that Morgan would not testify. Morgan did not personally claim his privilege against self-incrimination nor was any attempt made to

show that he was not testifying because of the privilege.[2]

■ As is well known, the privilege against self-incrimination is personal to the witness and can be asserted only by him. *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), reh. den. 341 U.S. 912, 71 S.Ct. 619, 95 L.Ed. 1348. *Sharp v. United States*, 410 F.2d 969 (5th Cir.1969); *Glasper v. State*, 486 S.W.2d 350 (Tex.Cr. App.1972); *Cherb v. State*, 472 S.W.2d 273 (Tex.Cr.App.1971). Not even the witness' attorney may claim the privilege for him. *United States v. Moore*, 485 F.2d 1165 (5th Cir.1973); 8 Wigmore, Evidence, § 2272 at 42 (McNaughton rev. 1961).

The appellant finally moved for severance after the parties had rested and closed at the guilt stage of the trial. At this point the court did not err in overruling the belated severance motion. We agree with the Court of Appeals that the appellant failed to satisfy the diligence requirement.

We also agree with the Court of Appeals that Morgan's testimony at the hearing on the motion for new trial was somewhat vague and uncertain, was not as complete as appellant's trial testimony, and was merely cumulative and corroborative.

In *Wilson v. State*, 633 S.W.2d 952 (Tex. App.-El Paso 1982), the court wrote:

"In both *Whitmore* and the present case, the appellants testified in their own behalf. In *Whitmore*, however, the co-defendant's potential testimony addressed relevant facts to which the appellant was not privy. In the instant case, Rawlins' testimony at the hearing on appellant's motions reflects the same evidence which appellant himself put before the jury. As a result, it is cumulative and corroborative only. There was no error in denying the motion for new trial . . . ."

■ Further, the "newly available" evidence must be material. It must be proba-

bly true and of such weight as probably to produce a different result at another trial. *Van Byrd v. State*, 605 S.W.2d 265 (Tex. Cr.App.1980). The credibility of the witnesses and the probable truth of the new evidence are matters to be determined by the trial court. *Williams v. State*, 504 S.W.2d 477 (Tex.Cr.App.1974); *Todd v. State*, 601 S.W.2d 718 (Tex.Cr.App.1980). The trial judge at the trial in the instant case and at the hearing on the motion for new trial was the same. He in effect determined that the materiality of the evidence was not such as to bring about a different result in another trial. See and cf. *Eddlemon v. State*, 591 S.W.2d 847 (Tex.Cr.App.1979). A motion for a new trial based on newly discovered evidence is addressed to the sound discretion of the trial judge and his decision, absent a showing of clear abuse of discretion, should not be disturbed on appeal. *Collins v. State*, 548 S.W.2d 368 (Tex.Cr.App.1976), cert. den. 430 U.S. 959, 97 S.Ct. 1611, 51 L.Ed.2d 811 (1977); *Hill v. State*, 480 S.W.2d 670 (Tex.Cr.App.1972).

The trial court did not abuse its discretion in overruling the motion for a new trial. See *Ayers v. State*, 606 S.W.2d 936, 941 (Tex.Cr.App.1980).

Appellant also urges the Court of Appeals erred in holding the trial court did not err in overruling co-defendant Morgan's motion for an instructed verdict of not guilty.

■ After both the appellant and Morgan rested their cases, Morgan's counsel moved for an instructed verdict. It was overruled. Sometime later, prior to the time the charge was read to the jury at the guilt stage of the trial, appellant's counsel objected to the court's failure to grant, not her motion, but Morgan's motion for instructed verdict. Even if the objection could be considered timely and even though it was not appellant's motion, we observe as did the Court of Appeals that a trial court is presumed to have good cause to

---

**2.** At the hearing on the motion for new trial, Morgan testified that he wanted to testify at the

trial and expected to, but his retained counsel would not permit him to do so.

overrule a motion for instructed verdict. *Wyatt v. State,* 566 S.W.2d 597 (Tex.Cr. App.1978).

Appellant's contention is overruled.

The judgments of the Court of Appeals and the trial court are affirmed.

MILLER, J., concurs in the result.

CLINTON, Judge, dissenting.

When all veneer of verbiage is stripped away the bared reality is that appellant has been denied her constitutional and statutory right to present "witnesses in her favor." Article I, § 10, Constitution of the State of Texas, and Article 1.05, V.A.C.C.P. Generally I agree with the essence of the dissenting opinion rendered by Justice Murphy; particularly do I subscribe to his cogent observation: "Justice is not served where as in the case before us a defendant is denied the testimony of the only witness to the offense due to a non-existent procedural mandate." *Etter v. State,* 629 S.W.2d 839, 842 (Tex.App.-Houston [14th] 1982).

Accordingly, I respectfully dissent.

TEAGUE, J., joins.