In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00241-CR


______________________________




DONALD DEQUINN ROBERT, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court No. 34,706-A




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 On an otherwise ordinary evening, Mack Finley was visiting Sessile Brewster and Chris
Lacy, two friends of his, in the Longview apartment of Brewster and Lacy's stepfather, Lawrence
Bornes. When Finley answered a knock at the door, three men--reportedly Donald DeQuinn Robert,
Michael Brown, and William Walton--entered the apartment and demanded money at gunpoint. 
Robert was convicted by a jury of aggravated robbery, and the jury assessed his punishment at twelve
years' imprisonment.

 We affirm the trial court's judgment because (1) the evidence is legally and factually
sufficient to support the conviction, (2) ineffective assistance of counsel has not been shown, and
(3) Robert failed to establish a right to a new trial.

(1) The Evidence Is Legally and Factually Sufficient to Support the Conviction

 Robert argues the evidence is legally and factually insufficient. In reviewing the legal
sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual
sufficiency review, we review all the evidence, but do so in a neutral light and determine whether
the evidence supporting the verdict is so weak or is so outweighed by the great weight and
preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. Roberts
v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Marshall v. State, 210 S.W.3d 618, 625 (Tex.
Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Clewis v.
State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

 The trial testimony recounts the following story. On his way to visit a friend's house, Bornes
stopped and talked with Robert and his two codefendants in the parking lot of the apartment
complex. Bornes had previously gambled with the three codefendants. Robert asked if he could buy
back a car he had sold to Bornes. 

 Around 7:00 or 7:30 p.m., Lacy answered a knock at the door of Bornes' apartment, in which
Finley was visiting Brewster and Lacy. Brown was at the door and inquired whether Bornes was
home. Lacy testified that he noticed Walton and Robert sitting on the steps outside the apartment. 
Approximately five minutes later, there was another knock at the door. Finley answered the door
that time. When Finley opened the door, a gun was immediately thrust into his face and he was
pushed backward into the apartment. Lacy testified that Robert, accompanied by Brown and Walton,
entered the apartment and demanded money at gunpoint. When Finley claimed he had no knowledge
of the whereabouts of any money in the apartment, Robert grabbed Finley and put the gun to the back
of Finley's head. When Finley told Robert that Lacy lived at the apartment, Robert said, "where he
at, I'm going to kill him, five, four, three . . . . " Robert put a gun to the back of Lacy's head and
forced him to walk to his parents' bedroom. Lacy found a sack which contained a twenty dollar bill
and handed it to Robert. Robert claimed the money was not enough and threatened to kill Lacy if
he did not give them more money. After a search of the room, Lacy was shut in the bedroom closet. 
 Bornes testified some prescription pills were stolen in this event. Bornes testified that
$1,600.00 of his, located on top of some books on the dresser, was not taken. Officer Kevin Parker
testified that, when he arrested Walton approximately five days later, Walton had a pill bottle in his
possession with Bornes' name on it. Officer Carl Watley testified that all the witnesses, except 
Brewster (who knew the men by name) identified the three men in photographic lineups. 

 Robert argues the evidence is insufficient to prove beyond a reasonable doubt that he
participated in the robbery. The State offered testimony from Brewster, Sherman Roseborough, and
Lacy positively identifying Robert as one of the attackers. Brewster, Roseborough, and Lacy all
testified that Robert wielded a gun during the robbery. Roseborourgh, Brewster, and Lacy testified
they went to school with Robert. 

 In addition, Robert argues he cannot be convicted because Finley did not testify at trial. 
According to Robert, there is no evidence of "lack of consent and other elements that can be proven
by the testimony of the purported victim." There is evidence that the items were not taken with
effective consent of the owners. (1) Brewster testified the three men did not have permission to take
anything from the home.

 A rational juror could have concluded from Brewster's testimony and the circumstances
surrounding the robbery that the three men did not have effective consent of the owner. A rational
trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The
evidence is legally sufficient.

 We turn to a factual sufficiency analysis based on the above, with additional evidence.

 Robert directs our attention to a few inconsistencies in the testimony of the victims. Officer
Parker testified he was told by the witnesses that Robert had "a do-rag pulled down to right above
the bridge of the nose." Parker also testified Robert would pull the do-rag "up when he wanted to
see what he was doing, exposing his eyes." According to Parker, Walton had a do-rag and "was
doing the same thing." Officer Watley testified that the witnesses told him the robbers had their
"shirt pulled over or bandanna like around the mouth and nose area." The witnesses, though, denied
the men had do-rags covering their faces. Lacy testified Walton and Robert had do-rags on their
heads but not covering their faces. Brewster testified Robert was wearing a do-rag but the do-rag
did not cover his face. Robert also directs our attention to Lacy's testimony that he called Bornes
after the first visit and that Bornes did not mention this call.

 The record also contains some evidence contrary to the verdict of the jury. Lakendric Miller
testified that, after talking with Bornes, he believed Bornes merely "jumped to the conclusion" that
Robert was one of the robbers because he had seen Robert in the parking lot. Miller testified he did
not see how the robbers who had been wearing masks could have been identified. George Holland,
Robert's father, testified that Bornes, when he talked with Holland about the incident, denied
knowing who the robbers were. Robert testified he had given Walton and Brown a ride to the
apartment complex that evening. Robert, though, denied participating in the robbery and testified
he merely dropped Walton and Brown off at the apartments following the short conversation with
Bornes. According to Robert, Bornes called Robert after the robbery and identified Brown as the
robber who was not masked. In this conversation, Bornes denied knowing who the two masked
robbers were. 

 The jury is the exclusive judge of the credibility of witnesses and of the weight to be given
their testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence. 
Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). The evidence supporting the jury's
verdict is not so contrary to the great weight and preponderance of the evidence that the jury's verdict 
is clearly wrong or manifestly unjust. The evidence is factually sufficient. We overrule Robert's
challenges to the sufficiency of the evidence.

(2) Ineffective Assistance of Counsel Has Not Been Shown

 Robert alleges his trial counsel's performance was deficient because counsel permitted the
State to introduce hearsay and other inadmissible evidence. The standard of testing claims of
ineffective assistance of counsel is set out in Strickland v. Washington, 466 U.S. 668 (1984), and
adopted for Texas constitutional claims in Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App.
1986). To prevail on this claim, an appellant must prove by a preponderance of the evidence (1) that
his or her counsel's representation fell below an objective standard of reasonableness and (2) that the
deficient  performance  prejudiced  the  defense.  Strickland,  466  U.S.  at  689;  Rosales  v.  State,
4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the appellant must prove that his
or her attorney's representation fell below the standard of prevailing professional norms and that
there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would
have been different. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this
standard, a claimant must prove that counsel's representation so undermined the proper functioning
of the adversarial process that the trial cannot be relied on as having produced a just result. 
Strickland, 466 U.S. at 686. 

 Our review of counsel's representation is highly deferential, and we indulge a strong
presumption that counsel's conduct falls within a wide range of reasonable representation. 
Strickland, 466 U.S. at 689; Tong, 25 S.W.3d at 712. This Court will not second-guess through
hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued
a different course support a finding of ineffectiveness. Blott v. State, 588 S.W.2d 588, 592 (Tex.
Crim. App. 1979); Harner v. State, 997 S.W.2d 695, 704 (Tex. App.--Texarkana 1999, no pet.). 
Any allegation of ineffectiveness must be firmly based in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness. Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999). The burden is on the appellant to overcome that presumption by identifying the
acts or omissions of counsel that are alleged to have constituted the ineffective assistance and then
affirmatively prove that they fall below the professional norm for reasonableness. Jackson v. State,
973 S.W.2d 954 (Tex. Crim. App. 1998). 

 The failure to object to inadmissible evidence may give rise to ineffective assistance of
counsel. See Alvarado v. State, 775 S.W.2d 851, 857 (Tex. App.--San Antonio 1989, pet. ref'd)
(failure to object to an overwhelming amount of inadmissible evidence). At the guilt/innocence
phase of the trial, the State introduced evidence which Robert claims is inadmissible. The State
questioned Robert at trial regarding a disciplinary program known as "ABLE" and elicited testimony
from Robert that he misbehaved at school and did not follow school rules. The State also questioned
Robert concerning his convictions for the misdemeanor offenses of unlawfully carrying a weapon
and failure to identify. Robert's trial counsel did not object to this testimony. Robert cites Trippell
v. State, 535 S.W.2d 178 (Tex. Crim. App. 1976), for the proposition that unlawfully carrying a
weapon is not a crime of moral turpitude.

 In addition, Robert claims his attorney should have objected to hearsay evidence introduced
by the State. Detective David Cheatum was allowed to testify concerning a statement made by
Walton, the arrest of Walton, the evidence found on Walton, and Cheatum's opinion as to Walton's
truthfulness. Officer Parker was permitted to testify to statements made by Lacy and Finley which
were hearsay. Robert argues some, if not all, of this testimony was inadmissible and should have
been objected to.

 Although the record contains no objections to the complained-of evidence, the record does
not conclusively establish that no objection was made. The record indicates there was a bench
conference held immediately before the State's questions relating to Robert's prior convictions. The
bench conference was not recorded by the court reporter. Robert's trial counsel may have objected
during this bench conference.

 Further, Robert's failure to object may have been based on trial strategy. In the absence of
direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a
strategic motivation if any can be imagined. Garcia v. State, 57 S.W.3d 436, 441 (Tex. Crim. App.
2001). We will not conclude the challenged conduct constitutes deficient performance unless the
conduct was so outrageous that no competent attorney would have engaged in it. Id.; see Thompson
v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Ineffective assistance of counsel claims must
be evaluated based on the totality of the circumstances. Strickland, 466 U.S. at 693. "Isolated
failures to object to certain procedural mistakes or improper evidence or argument do not constitute
ineffective assistance of counsel." Wenzy v. State, 855 S.W.2d 52, 53 (Tex. App.--Houston [14th
Dist.] 1993, pet. ref'd). Under the totality of the circumstances, we are unable to conclude the failure
to object was so outrageous no competent attorney would have engaged in it. Robert has failed to
show his trial counsel's performance was deficient.

 Further, Robert has failed to show a reasonable probability that, but for his attorney's
deficiency, the result of the trial would have been different. Robert argues harm is clearly
established. More specifically, Robert directs our attention to the use of the school suspension and
prior convictions by the State during the State's closing argument. We are unable to conclude
counsel's representation so undermined the proper functioning of the adversarial process that the trial
cannot be relied on as having produced a just result. We overrule this issue.

(3) Robert Failed to Establish a Right to a New Trial

 Robert also argues that the trial court erred in denying Robert's motion for new trial. During
the hearing on the motion for new trial, Brown, one of Robert's codefendants, testified that Robert
did not participate in the robbery. According to Brown's post-trial testimony, Robert merely dropped
Brown off at the Treehouse Apartments and then left. Brown denied Robert had any knowledge 
Brown was intending to commit a crime. Robert claims Brown's testimony is newly available
evidence because Brown was not available to testify at Robert's trial. At the time of Robert's trial,
Robert's attorney was denied access to Brown by Brown's attorney. After Robert's trial concluded
but before the motion for new trial was filed, Brown pled guilty and therefore became available to
testify. Roberts claims the trial court erred in denying Robert's motion for new trial due to the newly
available evidence.

 The granting or denying of a motion for new trial is within the discretion of the trial court. 
We do not substitute our judgment for that of the trial court, but rather decide whether the trial
court's decision was arbitrary or unreasonable. Salazar v. State, 38 S.W.3d 141, 148 (Tex. Crim.
App. 2001); Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). Newly available evidence is
treated the same as newly discovered evidence. Hartson v. State, 59 S.W.3d 780, 783 n.2 (Tex.
App.--Texarkana 2001, no pet.); see Ross v. State, 9 S.W.3d 878, 884 (Tex. App.--Austin 2000,
pet. ref'd). To obtain a new trial because of newly discovered evidence or newly available evidence,
an appellant must show four things:

 (1) the newly discovered evidence was unknown or unavailable to the movant at the
time of his trial;


 (2) the movant's failure to discover or obtain the evidence was not due to a lack of
diligence;


 (3) the new evidence is admissible and is not merely cumulative, corroborative,
collateral, or impeaching; and,


 (4) the new evidence is probably true and will probably bring about a different result
on another trial.


Keeter v. State, 74 S.W.3d 31, 37 (Tex. Crim. App. 2002) (same four-part test applies under Article
40.001 of the Texas Code of Criminal Procedure); (2) Moore v. State, 882 S.W.2d 844, 849 (Tex. Crim.
App.1994); see Tex. Code Crim. Proc. Ann. art. 40.001 (Vernon 2006).

 In order to show that the failure to discover or obtain the evidence was not due to a lack of
diligence, the appellant must show an attempt was unsuccessfully made to obtain the codefendant's
testimony. The privilege against self-incrimination is personal to the witness and cannot be asserted
by anyone on the defendant's behalf--not even his or her own attorney. Etter v. State, 679 S.W.2d
511, 515 (Tex. Crim. App. 1984). If an appellant does not force a codefendant to personally assert
his or her privilege against self-incrimination, the appellant has failed to show a lack of diligence. 
Drew v. State, 743 S.W.2d 207, 225 (Tex. Crim. App. 1987); Etter, 679 S.W.2d at 515. A defendant
fails to satisfy the diligence requirement when he or she does not call the codefendant as a witness. 
Etter, 679 S.W.2d at 514; see Drew, 743 S.W.2d at 225. Robert did not subpoena or call Brown as
a witness. At the hearing on motion for new trial, Robert's trial counsel testified he had contacted
Brown's attorney who refused to allow Robert's trial counsel to question Brown. Although he could
not recall whether Brown's counsel specifically represented that Brown would assert his Fifth
Amendment privilege, Robert's trial counsel testified he assumed Brown would invoke the Fifth
Amendment based on his experience as a defense attorney and the conversation with Brown's
counsel. Robert's trial counsel testified he did not subpoena Brown or attempt to call Brown as a
witness. At the motion for new trial hearing, Brown testified he did not "have any sort of a
conversation" with Robert's trial counsel. The record does not establish that Brown ever personally
asserted his privilege against self-incrimination. The only evidence that Robert exercised diligence
in attempting to secure Brown's testimony before trial is that Robert's trial counsel contacted Brown's
trial counsel and concluded Brown would assert his privilege against self-incrimination. (3) Because
Robert did not subpoena or call Brown as a witness, Brown never personally asserted his privilege
against self-incrimination. Because Robert has failed to establish due diligence, we overrule this
point of error. (4)






 We affirm the trial court's judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: August 17, 2007

Date Decided: December 6, 2007


Do Not Publish
1. We note the State argues consent is not an element of aggravated robbery. Whether the
property is taken without the owner's effective consent is an element of the offense of aggravated
robbery. A person commits aggravated robbery if he or she uses or exhibits a deadly weapon in the
course of committing robbery. Tex. Penal Code Ann. § 29.03(a)(2) (Vernon 2003). Robbery is
committed if, in the course of committing theft and with intent to obtain or maintain control of
property, a person intentionally or knowingly threatens or places another in fear of imminent bodily
injury or death. Id. A person commits theft if he or she unlawfully appropriates property with the
intent to deprive the owner of the property without the owner's consent. Tex.  Penal  Code  Ann. 
§ 31.03(a), (b)(1) (Vernon Supp. 2007). 
2. See Rodriguez v. State, 191 S.W.3d 428, 475 (Tex. App.--Corpus Christi 2006, pet. ref'd).
3. The Amarillo Court of Appeals has found a lack of due diligence when the record contains
no support for the appellant's claim that the codefendant would have asserted the privilege against
self-incrimination other than the appellant's statement in his brief that the codefendant "had been
advised by her counsel not to be a witness in this case until after her trial." Smith v. State, 789
S.W.2d 350, 358 (Tex. App.--Amarillo 1990, pet. ref'd); see Bui v. State, No. 14-93-00499-CR,
1995 Tex. App. LEXIS 2903 (Tex. App.--Houston [14th Dist.] Nov. 22, 1995, pet. ref'd) (mem. op.,
not designated for publication) (appellant waived right when he made no attempt to call witness at
trial). 
4. In an issue we need not decide because of Robert's lack of diligence, the State argues Robert
is not entitled to a new trial because the matter of his nonparticipation, if true, was known to Robert
at the time of trial. In support of this proposition, the State cites Drew, 743 S.W.2d at 225-26. The
State also cites United States v. Adi, 759 F.2d 404, 409 (5th Cir. 1985); United States v. Metz, 652
F.2d 478, 479 (5th Cir. 1981); and Etter, 679 S.W.2d at 514. Etter, though, does not hold the
statement does not qualify as "newly discoverable" evidence. Rather, Etter concludes that, by failing
to call a witness to the stand to force him or her to claim the constitutional privilege against self-incrimination, an appellant fails to meet the diligence requirement; therefore, the trial court did not
abuse its discretion in finding the allegedly new evidence was not material. Etter, 679 S.W.2d at
514-15 (arguable that evidence is "newly available"). Metz recognized that the trial court may
consider whether the exculpating testimony of a codefendant is contrary to his or her own penal
interest. Metz, 652 F.2d at 480. The court suggested that "newly available" evidence was not
synonymous with "newly discoverable" evidence and concluded without much discussion that the
evidence was not newly discoverable. Id. Adi concluded with little discussion that the trial court
did not abuse its discretion in denying the motion for new trial. Adi, 759 F.2d at 409 (witness
recanted prior testimony). We do not find Metz or Adi to be particularly persuasive authority beyond
the extent Metz was relied upon by the Texas Court of Criminal Appeals in Drew. The holding in
Drew was based in part on a conclusion the evidence was not newly discovered or newly available. 
743 S.W.2d at 227. The court stated "[a] new trial is never allowed for the purpose of obtaining
evidence that was known and accessible to the defendant at the time the cause was tried, 'and this
is true although the defendant had knowledge of the evidence but failed to communicate it to his
attorney.'" Id. at 227 n.14. Drew rested on three holdings: (1) the trial court lacked jurisdiction to
grant a new trial, (2) the evidence was not newly discoverable, and (3) the defendant failed to show
sufficient diligence. Id. at 226-28. Given that the Texas Court of Criminal Appeals relied on other
independent theories, including a jurisdictional ground, one could argue the conclusion--that the
appellant was not entitled to a new trial because the evidence was known to the appellant at the time
of trial--was merely obiter dictum.


 There is authority that a defendant is entitled to a new trial based on "newly available"
evidence even when he or she knew of the evidence at the time of trial but the evidence was
unavailable for use at trial. See Whitmore v. State, 570 S.W.2d 889, 896 (Tex. Crim. App. 1976) (op.
on reh'g) (plurality opinion overruling State's motion for rehearing); see also Yarbrough v. State, 57
S.W.3d 611, 618 n.5 (Tex. App.--Texarkana 2001, pet. ref'd) (a discussion by Justice Ben Z. Grant
criticizing Drew v. State); cf. 43A George E. Dix & Robert O. Dawson, Texas Practice:
Criminal Practice and Procedure § 41.51 (2d ed. 2001) ("If a witness asserts a privilege against
self-incrimination and is not required to testify at trial, that witness was then unavailable to the
defense even though the evidence was known before trial."); 4 Texas Criminal Practice Guide:
New Trial and Arrest of Judgment § 80.01[8][d][iii] (Matthew Bender & Co. ed., 2007) (citing
Whitmore for the following proposition: "For example, it has been held that the testimony of a
codefendant, who at the time of trial asserted the privilege against self-incrimination and deprived
the defendant of the right to call the codefendant as a witness, is newly available evidence that may
entitle the defendant to a new trial."); cf. Smith, 789 S.W.2d at 358.