Opinion issued May 29, 2009



 













In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00697-CR




CARLOS LANDRIAN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 998050




MEMORANDUM OPINION
          A jury convicted appellant, Carlos Landrian, of aggravated assault and assessed
punishment at seven years’ confinement in prison with a recommendation for
community supervision. See Tex. Penal Code Ann. § 22.02(a) (Vernon Supp.
2008). The jury answered a separate special issue on the use or exhibition of a deadly
weapon in the affirmative. The trial court suspended appellant’s sentence and
assessed punishment at seven years’ community supervision. 
          Appellant appealed, raising six points of error. We reversed the conviction on
appellant’s first point of error, holding that the trial court had erred by not requiring
the jury to reach a unanimous verdict as to one of two paragraphs alleged in a one-count indictment, i.e., on whether appellant intentionally or knowingly caused bodily
injury by using a bottle as a deadly weapon or whether he recklessly caused serious
bodily injury by throwing a bottle in the complainant’s direction. Landrian v. State,
263 S.W.3d 332 (Tex. App.—Houston [1st Dist.] 2007), rev’d, 268 S.W.3d 532 (Tex.
Crim. App. 2008).
          The State filed a petition for discretionary review, which was granted, and the
Texas Court of Criminal Appeals reversed the judgment of this Court. See Landrian
v. State, 268 S.W.3d 532 (Tex. Crim. App. 2008). The Court of Criminal Appeals
remanded the case to this Court to address appellant’s remaining points of error. Id.
at 542. 
 

          We now determine (1) whether the evidence is legally sufficient to support the
conviction and deadly weapon finding, (2) whether the evidence is factually sufficient
to support the conviction, (3) whether the trial court erred by denying appellant’s
request to reopen the case, (4) whether the trial court erred by denying appellant’s
motion for new trial on grounds of newly discovered evidence, (5) whether the trial
court erred in charging the jury, and (6) whether the trial court improperly coerced the
jury.
           We affirm.    
Facts
          On December 19, 2003, appellant attended a company Christmas party at the
Camino Real Apartments clubhouse. The complainant, Luis Brizuela, testified that
he went to the party to pick up his cousin, who worked for the company. Sometime
after arriving, the complainant went outside to the back of the clubhouse to answer
his cell phone. After finishing his call, the complainant returned to the front of the
clubhouse, where he saw Luis Miguel, a drunk “party-crasher,” lying on the ground,
bleeding. Miguel and appellant had been fighting, according to witnesses, whose
versions of the fight varied drastically. Although the complainant did not see the
preceding fight, he later saw appellant come from inside the clubhouse and throw a
bottle that injured the complainant. A piece of glass from the bottle lodged in the
complainant’s eye. 
          The complainant suffered a severe laceration of the cornea and sclera and
significant trauma of the retina and other interior parts of the eye. The complainant’s
eye had to be removed. Dr. Matthew Benz performed the initial surgery on the
complainant’s eye. He thought that the injury was more consistent with an act of
throwing a broken bottle into the eye than with a piece of glass flying into the eye
after a bottle had been broken on someone else’s head. Dr. Benz said that for the
piece of glass to penetrate the eye, “it would take a significant amount of force.” 
           The day after the incident, Officer Bang Le of the Houston Police Department
(“HPD”) met with the complainant at his home to complete an offense report. The
complainant told Officer Le that the incident the day before had been “an accident”
and that appellant had attempted to hit Miguel with the bottle, but had hit the
complainant instead. Appellant was eventually arrested for the aggravated assault of
the complainant. 
          At trial, the State presented witnesses who testified that appellant had thrown
a bottle and injured the complainant. However, the witnesses’ testimony differed
about how appellant had thrown the bottle. The complainant testified that appellant
had exited the front door of the clubhouse and had intentionally thrown an unbroken
beer bottle directly at him, striking the complainant in the head and causing the glass
to become lodged in his eye. Two HPD officers testified that the complainant’s
original complaint stated that appellant had attempted to throw the bottle at Miguel,
but had accidentally hit the complainant with the bottle. The State’s witness Hernan
Martinez testified that appellant had exited the clubhouse with a beer bottle, which
he had broken on the pavement, and then had thrown the bottle at the complainant. 
After Martinez made this statement, the State showed Martinez his original statement
to police, in which he stated that appellant had thrown the bottle at Miguel, but had
hit the complainant. Finally, State’s witness Piedad Salazar, then Martinez’s wife,
testified that appellant had broken the bottle against a wall as he was reentering the
clubhouse, then had turned around at the door and thrown the bottle, not aiming at
anyone. She stated that the broken bottle had hit the complainant. 
          Appellant and his witnesses, which included Mardoqueo Lopez, appellant’s
boss and the host of the party, and Gerardo Tapia, Lopez’s business partner, testified
that appellant had gone outside the party to help clean up and that a group of men,
including the complainant and Miguel, were outside the clubhouse, drinking.
According to Lopez, the three men had been asked to leave the party about an hour
earlier because they were drinking, causing problems, and two of them—including
the complainant—had not even been invited. Appellant’s witnesses testified that
Miguel had attacked appellant as appellant had exited the building. Appellant testified
that he had hit Miguel in the head with a beer bottle in an attempt to ward off a
second attack by Miguel. The bottle exploded on Miguel’s head, appellant stated, and
some glass hit the complainant. Appellant further testified that he did not find out
until the following day that the complainant had been injured by the broken glass. 
Sufficiency of the Evidence
          In his sixth point of error, appellant argues that the evidence is legally and
factually insufficient to support the jury’s verdict. 
A.      Legal sufficiency
          Appellant asserts three separate contentions of reversible error for legal
insufficiency: (1) the State introduced “no evidence” that appellant “threw the bottle
at [the complainant]”; (2) the State failed to “provide any evidence showing that
[appellant] was not acting in self-defense”; and (3) the State offered “no evidence”
that the beer bottle could have caused death or serious bodily injury. 
          1.       Standard of review 
          When evaluating the legal sufficiency of the evidence, a reviewing court must
view the evidence in the light most favorable to the verdict and determine whether
any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781,
2789 (1979); Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). A
reviewing court does not resolve any conflict of fact, weigh any evidence, or evaluate
the credibility of any witnesses because these are the functions of the trier of fact. See
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); Adelman v. State, 828
S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State, 819 S.W.2d 839, 843
(Tex. Crim. App. 1991). Instead, the duty of this Court is to determine whether both
the explicit and implicit findings of the trier of fact are rational by viewing all the
evidence admitted at trial in the light most favorable to the verdict. See Curry v.
State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); Adelman, 828 S.W.2d at 422. In
doing so, we resolve any inconsistencies in the evidence in favor of the verdict,
Matson, 819 S.W.2d at 843, and “defer to the jury’s credibility and weight
determinations,” Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). 
          2.       Discussion
                    (a)     Evidence that bottle was thrown in regard to allegations in
second paragraph
 
          Appellant asserts that the State presented no evidence proving that appellant
threw the bottle directly at the complainant.
          The jury was authorized to convict appellant, under the second paragraph of
the indictment, if appellant recklessly caused serious bodily injury to the complainant
by throwing a bottle in the direction of the complainant. The record reveals that both
the complainant and Martinez testified that appellant threw the bottle directly at the
complainant. Viewing all the evidence in the record in the light most favorable to the
verdict, a rational jury could have found beyond a reasonable doubt that appellant
recklessly caused serious bodily injury to the complainant by throwing a bottle in the
direction of the complainant. 
                    (b)     Evidence that disproved defense of deadly force in defense of
person in regard to allegations in first paragraph 
 
          Appellant also contends that the State failed to prove and that “the jury could
not have found beyond a reasonable doubt that [appellant] was not acting in self-defense, which is a required element of the State’s case.” Because the trial court
submitted the law of deadly force in defense of person only as a defense to the first
paragraph of the indictment, which alleged intentional or knowing conduct, we
construe appellant’s argument to be that the evidence is legally insufficient to support
the jury’s implied finding against his defense of deadly force in defense of his person
in regard to the allegations in the first paragraph of the indictment.  
          The jury was authorized under the charge to convict appellant of aggravated
assault if each juror found either that: (1) appellant intentionally or knowingly caused
bodily injury to the complainant by using a deadly weapon, namely, a bottle (as
alleged in paragraph one), or that (2) appellant recklessly caused serious bodily injury
to the complainant by throwing a bottle in complainant’s direction (as alleged in
paragraph two). Landrian, 268 S.W.3d at 533, 539. Because the jury was authorized
to convict appellant under alternate allegations, appellant’s conviction will be upheld
if the evidence is legally sufficient to support either of the two alternate allegations
under which conviction was authorized by the charge. See Fuller v. State, 827
S.W.2d 919, 931 (Tex. Crim. App. 1992) (“It is well-settled that when a general
verdict is returned and the evidence is sufficient to support a finding of guilt under
any of the paragraph allegations submitted [to the jury,] the verdict will be upheld.”)
          Because we have already found that the evidence was legally sufficient to
support appellant’s conviction under the allegations in the second paragraph of the
indictment, we need not determine whether the evidence is legally sufficient to
support his conviction under the allegations in the first paragraph of the indictment. 
We therefore need not address appellant’s complaint that the evidence is legally
insufficient to support any implied jury finding against his defense of deadly force in
defense of his person as to the first paragraph of the indictment.


 See id. (“We must
therefore determine whether there was sufficient evidence to support the finding of
guilt based upon any one of the paragraph allegations which were submitted to the
jury.”); Powell v. State, 112 S.W.3d 642, 646 (Tex. App.—Houston [1st Dist.] 2003,
pet. ref’d) (declining to address sufficiency of evidence for one basis for conviction
authorized by charge when appellate court had already determined evidence sufficient
to support another basis for conviction authorized by charge) (citing Rabbani v. State,
847 S.W.2d 555, 558 (Tex. Crim. App. 1992)). 
                    (c)     Evidence that bottle was deadly weapon in regard to
allegations in first paragraph and jury’s deadly weapon
finding
 
          Finally, appellant contends that the State failed to show “any evidence” that the
bottle was a deadly weapon.
          A deadly weapon is anything that in the manner of its use or intended use is
capable of causing death or serious bodily injury. Tex. Penal Code Ann.
§ 1.07(a)(17)(B) (Vernon Supp. 2008). The State presented evidence that appellant
intentionally threw the bottle directly at the complainant. Officer Le testified that a
bottle thrown or slashed at another could cause death or serious bodily injury. The
evidence further showed that the complainant lost his right eye as a result of the
broken glass from the bottle. The complainant’s permanent loss of his right eye
constitutes serious bodily injury. Id. § 1.07(a)(46) (Vernon Supp. 2008) (“‘Serious
bodily injury’ means . . . protracted loss or impairment of the function of any bodily
member or organ.”). Accordingly, viewing the evidence in the light most favorable
to the verdict, we hold that a rational jury could have found beyond a reasonable
doubt that the bottle was capable of inflicting serious bodily injury and so was a
deadly weapon. 
          3.       Resolution
          Viewing the evidence in the light most favorable to the verdict, we hold that
a rational jury could have found, beyond a reasonable doubt, that appellant was guilty
of the offense of aggravated assault and that the bottle was a deadly weapon. We
overrule appellant’s challenges to the legal sufficiency of the evidence, hold that the
evidence is legally sufficient to support the conviction, and overrule the legal-sufficiency portion of appellant’s sixth point of error.
B.      Factual sufficiencyAppellant also argues that the evidence is factually insufficient to support his
conviction. Appellant does not make a specific challenge regarding the factual
sufficiency of any particular element of the offense, but merely states generally that
the great weight and preponderance of the evidence contradicts the jury’s verdict. 
Appellant also does not cite this Court to any specific testimony or other evidence
that he asserts contradicts the jury’s verdict, nor does he provide any argument or
analysis as to why the evidence is insufficient under a factual sufficiency standard. 
          Appellant has failed to brief this issue adequately on appeal and presents
nothing for review. See Tex. R. App. P. 38.1(i); McDuff v. State, 939 S.W.2d 607,
613 (Tex. Crim. App. 1997). However, even assuming that appellant adequately
presented his factual–sufficiency arguments, the evidence is factually sufficient to
support his conviction.
          When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Johnson v. State, 23 S.W.3d 1, 6–7 (Tex. Crim. App. 2000). We will
set aside the verdict only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Id. at 11. Under the first prong of Johnson, we
cannot conclude that a conviction is “clearly wrong” or “manifestly unjust” simply
because, on the quantum of evidence admitted, we would have voted to acquit had we
been on the jury. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). 
Under the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury’s resolution of that
conflict. Id. Before concluding that evidence is factually insufficient to support a
verdict under the second prong of Johnson, we must be able to say, with some
objective basis in the record, that the great weight and preponderance of the evidence
contradicts the jury’s verdict. Id. 
          In conducting a factual-sufficiency review, we must be cognizant of the fact
that a jury has already passed on the facts and avoid substituting our judgment for that
of the jury. Lancon v. State, 253 S.W.3d 699, 704–05 (Tex. Crim. App. 2008). The
jury is the sole judge of the credibility of the witnesses and the weight to be given
their testimony and may choose to believe all, some, or none of the testimony
presented. Id. at 707. We therefore afford almost complete deference to a jury’s
determination when that decision is based on an evaluation of credibility. Id. at 705. 
In conducting a factual-sufficiency review, we also must discuss the evidence that,
according to the appellant, most undermines the jury’s verdict. Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). We may not find the evidence factually
insufficient simply because we disagree with the verdict, but only because the verdict
represents a manifest injustice. Watson, 204 S.W.3d at 414. 
          There was divergent testimony presented at trial regarding appellant’s actions
during the incident and the circumstances surrounding his actions. Reconciliation of
conflicts in the evidence is within the exclusive province of the jury. Losada v. State,
721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Here, the jury, despite defense
counsel’s extensive and thorough cross-examination, chose to believe the testimony
of the State’s witnesses implicating appellant. It was within the province of the jury
to weigh the evidence presented, to evaluate the credibility of the witnesses, to accept
or to reject the theories presented to it, and we must afford almost complete deference
to the jury’s decision when it is based on an evaluation of credibility. Lancon, 253
S.W.3d at 707. Reviewing the evidence in a neutral light, we hold that the jury
verdict is not against the great weight and preponderance of the evidence. Therefore,
we hold that the evidence is factually sufficient to support appellant’s conviction and
overrule the remainder of appellant’s sixth point of error.
Request to Reopen Evidence 
          In his second point of error, appellant maintains that the trial court committed
reversible error in denying his motion to reopen the evidence. After appellant had
rested, but before closing arguments were made, he sought to call Rosa Jimenez,
explaining to the court that Jimenez would testify that Salazar, who testified for the
State in rebuttal, was inside the clubhouse dancing with Jimenez at the time of the
fight and so was not outside, as Salazar had claimed in her testimony. The court
denied the request without hearing any testimony. Appellant asked to put on the
witness and to make a proffer of her evidence; the court declined his request to do so
at that time, but indicated that he could do so after closing argument. After argument,
outside the presence of the jury, Jimenez testified that she and Salazar had been
dancing in the middle of the dance floor near Jimenez when someone said, “Close the
door. Somebody is fighting.” Jimenez also testified that Salazar had commented to
“several of us” on the dance floor that she was waiting on her then-husband,
Martinez, to arrive at the party and that Martinez was not yet present at the time of
the fight. 
A.      Standard of review and the law
          The decision to reopen a case is left to the sound discretion of the trial court. 
 Kennerson v. State, 984 S.W.2d 705, 707 (Tex. App.—Houston [1st Dist.] 1998, pet.
ref’d). Thus, we review the trial court’s decision not to reopen evidence under an
abuse–of–discretion standard. See Thompson v. State, 480 S.W.2d 624, 629 (Tex.
Crim. App. 1972). “The court shall allow testimony to be introduced at any time
before the argument of a cause is concluded, if it appears that it is necessary to a due
administration of justice.” Tex. Code Crim. Proc. Ann. art. 36.02 (Vernon 2007).
The trial court commits error when it denies a motion to reopen the case in order to
allow a witness to testify when the following criteria are satisfied: (1) the witness is
present and ready to testify; (2) the motion to reopen is made before final arguments
and before the charge is read to the jury; (3) the movant states with specificity what
testimony the witness is expected to give and the importance that the testimony
carries; and (4) it is not apparent that the motion’s purpose is to frustrate the due
administration of justice. Scott v. State, 597 S.W.2d 755, 758 (Tex. Crim. App.
1979).
          A “due administration of justice” means that the trial court should reopen the
case if the evidence would materially change the case in the proponent’s favor. Peek
v. State, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003). The proffered evidence must be
more than just relevant; it must actually make a difference in the case. Id. at 79. 
Among the factors to be considered in determining the materiality of evidence
proffered in a request to reopen under article 36.02, are the weight of the evidence,
its probative value, the issue upon which it is offered, and whether it is cumulative. 
See id. at 78–79 (noting that such factors were not to be considered under Vital v.
State, 523 S.W.2d 662 (Tex. Crim. App. 1975) and overruling Vital); see also
Birkholz v. State, 278 S.W.3d 463, 464 (Tex. App.—San Antonio 2009, no pet.)
(holding that evidence must actually make difference in case and not be cumulative,
citing Peek). 
          If we hold that a trial court has erred in not granting a motion to reopen, we
must then conduct a harm analysis for non-constitutional error under Texas Rule of
Appellate Procedure 44.2(b) and determine whether the error affected the appellant’s
substantial rights. See Tex. R. App. P. 44.2(b); Kennerson, 984 S.W.2d at 707; see
also Reeves v. State, 113 S.W.3d 791, 794–95 (Tex. App.—Dallas 2003, no pet.)
(discussing overlap between Peek materiality requirement and rule 44.2(b) review and
conducting review under rule 44.2(b)). A substantial right is affected when the error
has a substantial and injurious effect or influence in determining a jury’s verdict. 
Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). In conducting a harm
analysis under rule 44.2(b), we review the record as a whole, including any testimony
or physical evidence admitted for the jury’s consideration, the nature of the evidence
supporting the verdict, the jury instructions given by the trial court, and the State’s
theory and any defensive theories. Id. We may not overturn a conviction for non-constitutional error if we are assured that the error did not influence the jury or that
it had but a slight effect. Id. 
B.      Discussion 
          The parties do not dispute that appellant’s witness, Jimenez, was present and
ready to testify when appellant moved to reopen the evidence and that such motion
was timely. Appellant stated with specificity the testimony that Jimenez was
expected to give. The sole question before this Court, then, is whether the trial court
abused its discretion in determining that Jimenez’s testimony was not “necessary to
a due administration of justice.”
          Appellant contends that Jimenez’s testimony flatly contradicted the claimed
eyewitness testimony from Martinez and Salazar, demonstrating that they were not
present at the scene of the fight, and argues that such testimony would have had a
substantial effect on the jury verdict. The State contends that Jimenez’s testimony
would not have materially changed the case in appellant’s favor because the
testimony was cumulative and did not directly contradict Martinez’s and Salazar’s
testimony. The State argues that “merely because Piedad Salazar may have been with
Jimenez inside the club when Jimenez heard about a fight does not necessarily
establish that Piedad Salazar was not outside when appellant assaulted the
complainant.” 
          We review the record to determine whether the trial court abused its discretion
in finding that Jimenez’s testimony, offered to impeach Salazar’s credibility regarding
whether Salazar had witnessed the fight, would not have “materially change[d] the
case in appellant’s favor.” 
          During the State’s case, the complainant testified that Martinez and Salazar
were standing behind him and to his right, with their infant son, when appellant threw
the bottle at him. The complainant also testified that Martinez and Salazar came to
his aid after he was injured. Martinez testified that he arrived at around 11:30 p.m
and went “in and out” of the clubhouse to say hello to some people, spending a very
short period of time inside. About five minutes after he had arrived, after he had gone
back outside, the fight began. According to Martinez, his wife, Salazar, was outside
holding the baby and saw everything that he saw. In response to inquiries from the
State, Martinez explained that Salazar had not come to testify at trial the same day as
he because she was taking care of the children, but he agreed to make arrangements
for her to come to testify the following day.
          In the presentation of appellant’s case, Tapia testified that he had seen the fight
and that Salazar was inside the clubhouse, not outside, during the fight. Another
defense witness, and previous co-worker of appellant, Carlos Fuentes, testified that
he had seen the fight, but had not seen a woman with a baby in the area where the
fight took place. Appellant testified that he had not seen Martinez outside, though he
remembered Fuentes and Tapia being present; he did not mention Salazar. 
          During the State’s rebuttal case, Salazar testified that she had arrived at the
party with a girlfriend at around 7:00 to 7:30 p.m. and that she and her children had
eaten and then enjoyed the party for a while. Her husband had not arrived until
between 11:00 and 11:30. After he had arrived, she went outside to talk to him
because he wanted to take the children home and she wanted to stay at the party. 
While she was outside, she witnessed the fight.       
          Jimenez testified, for purposes of the appellate record, that she had been inside
the clubhouse, dancing, when someone said, “Close the door. Somebody is fighting.”
At that time, Salazar was also in the middle of the dance floor with her children, “to
one side” of Jimenez. Jimenez said that she knew that Martinez was not present at
the time of the fight because Salazar had been waiting for her husband to arrive and
had commented on this fact to several people, explaining that he was at a meeting. 
According to Jimenez, Martinez had not arrived at the clubhouse at the time of the
fight. 
          Initially, we observe that Jimenez’s sparse testimony did not provide a time
frame for the statement that she heard, or for Salazar’s presence on the dance floor,
nor did it actually establish that the fight that Jimenez referenced was the one at issue
at trial. Jimenez’s testimony was not specific enough to establish that the acts that
she described occurred at the time of the fight at issue or during the time period in
which Salazar and Martinez testified that they had been outside. Jimenez did not
testify that Salazar had remained on the dance floor after the statement was made nor
did she state whether Salazar had gone outside afterwards, and if so, how much later. 
Jimenez also did not provide any testimony regarding what time she had seen
Martinez arrive at the clubhouse relative to such statement or whether she had even
seen him at all that evening. Jimenez’s scant testimony in the record establishes only
that Salazar had been on the dance floor at the unspecified time that someone stated,
“Close the door. Somebody is fighting[,]” and that, at that time, Jimenez had not seen
Martinez arrive at the party where Salazar had been waiting for him. 
 

          Jimenez’s proffered testimony would have allowed the jury to infer that Salazar
was not outside at the inception of the fight at issue, and that Martinez had either not
arrived at the party at the time of the fight or had not come inside the clubhouse first,
as he had testified. However, it does not directly contradict Salazar’s testimony that
she witnessed the fight or Martinez’s testimony that he witnessed the fight. Jimenez’s
testimony would have simply corroborated the testimony of Tapia, Fuentes, and
appellant that Martinez and Salazar were not present at the scene of the fight and
corroborated Tapia’s testimony that Salazar was inside the clubhouse at the time of
the fight. Jimenez’s testimony did not go directly to the issue of whether appellant
acted intentionally, knowingly, or in self-defense or acted recklessly in reference to
his actions with the bottle; rather, the proffered testimony would have merely
provided an additional indirect, partial impeachment of Salazar and Martinez, which
would have been cumulative and corroborative of more direct, complete, and
significant evidence contradicting Salazar and Martinez that was already before the
jury.
          Considering the entire record in this case, the weight of the evidence offered,
its probative value, the issue upon which it was offered, and its cumulative nature, we
conclude that the trial court did not abuse its discretion by implicitly ruling that
Jimenez’s proffered testimony would not have “materially change[d] the case in
appellant’s favor”—that is, would not have “actually make a difference in the case”—
and we hold that it did not abuse its discretion in denying appellant’s request to
reopen the evidence. See, e.g., Chalker v. State, No. 05-07-00570-CR, 2008 WL
3906405, at *2–3 (Tex. App.—Dallas, Aug. 26, 2008, pet. ref’d) (memo op., not
designated for publication) (holding that when there was ample testimony to place
appellant’s theory before the factfinder, additional evidence supporting theory was
cumulative and would not have materially changed case in appellant’s favor);
Ramirez v. State, No. 07-02-0345-CR, 2003 WL 22903974, at *2 (Tex.
App.—Amarillo, Dec. 9, 2003, pet. ref’d) (memo op., not designated for publication)
(holding that because there was sufficient evidence already before jury to support
defensive argument, trial court did not abuse discretion in not reopening to permit
more testimony on same issue). 
          Moreover, even if the trial court did err in not reopening the evidence to permit
Jimenez to testify, such error did not have a substantial and injurious effect or
influence in determining the jury’s verdict. Reviewing the record as a whole, and
considering in particular the evidence already before the jury from the testimony of
Tapia, Fuentes, and appellant, we hold that no harm is shown. See, e.g., Decluitt v.
State, No. 09-01-00278-CR, 2002 WL 1990777, at *4 (Tex. App.—Beaumont Aug.
28, 2002, pet. ref’d) (holding that trial court’s refusal to reopen evidence to allow jury
to hear additional testimony on same issue on which considerable evidence had
already been presented was harmless).
          Accordingly, we overrule appellant’s second point of error.Motion for New Trial
          In his third point, appellant contends that the trial court erred in denying his
motion for new trial based on newly discovered evidence, specifically, the testimony
of two additional witnesses, Danilo Gonzalez and Miguel Cruz, who testified at the
hearing on appellant’s motion for new trial. 
          Gonzalez, a co-worker of appellant and the complainant at the time of the
incident, and a co-worker of appellant at a different company at the time of the
motion for new trial, testified that the complainant had told him that the fact that a
piece of glass “fell in his eye” was an “accident” and was not the fault of appellant.
Gonzalez said that he had also overheard the complainant tell his employer, Rigoberto
Lopez, and Lopez’s wife that the accident was not appellant’s fault and overheard the
couple advising the complainant to press charges because “an eye was worth
$120,000,” and offering to cover legal expenses for him. Gonzalez further testified
that he was afraid to come forward during the trial because the son of Lopez was “in
problems” with a street gang, and he did not want any “repercussions” from Lopez’s
son, but he had come forward after the trial because he “became aware that they were
accusing [appellant] unjustly.” Gonzalez also stated that he knew that the trial was
going to occur; agreed that Rigoberto Lopez was the brother of Mardoqueo Lopez,
who had testified on behalf of appellant during trial; and admitted that he had worked
for Rigoberto Lopez for about a year and then was fired. He did not explain to whom
he had come forward or how appellant had become aware of his information, though
he did state that he had come forward after the verdict.
          Cruz testified that he had been with Martinez, a State’s witness, at an Alcoholic
Anonymous meeting on the night of the incident. According to Cruz, the meeting
ended at 11:00 p.m., and they had remained outside talking after the meeting for
about 45 minutes before heading to the party in separate cars at 11:45 p.m. When
Cruz arrived, people were gossiping about the fight, which had just occurred. Cruz
stated that Hernan Martinez was trying to reach him by telephone sometime after the
fight, but that he did not call him back; later, after the trial, Cruz told a mutual friend
of appellant’s about being with Martinez the night of the incident.
A.      Standard of review
          “A trial court abuses its discretion in denying a motion for new trial only when
no reasonable view of the record could support the trial court’s ruling.” Charles v.
State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). Thus, we reverse a trial court’s
decision denying a motion for new trial only if, viewing the evidence in the light most
favorable to the ruling, we conclude that the trial court’s decision is arbitrary or
unreasonable. Id. In reviewing the trial court’s ruling, we are mindful of the fact
that the trial court is the sole arbitrator of the credibility of the witnesses and evidence
offered. Id. We defer to the trial court’s determination of historical facts, presume
all reasonable factual findings that could have been made against the losing party
were made against that party, and defer to all reasonable implied factual findings that
the trial court might have made. Id. at 208, 211. Then, in light of the implied
reasonable factual findings, we determine whether the trial court, in denying the
motion for new trial, was “arbitrary and unreasonable,” id. at 208, acting “without
reference to any guiding rules or principles,” see Montgomery v. State, 810 S.W.2d
372, 380 (Tex. Crim. App. 1990) (op. on reh’g). 
          “A new trial shall be granted an accused where material evidence favorable to
the accused has been discovered since trial.” Tex. Code Crim. Proc. Ann. art.
40.001 (Vernon 2006); see Keeter v. State, 74 S.W.3d 31, 36 (Tex. Crim. App. 2002). 
Texas courts have used a four-part test in determining whether a trial court may grant
a new trial based on newly discovered evidence: (1) the newly discovered evidence
was unknown or unavailable to the movant at the time of his trial; (2) the movant’s
failure to discover or to obtain the evidence was not due to a lack of diligence; (3) the
new evidence is admissible and is not merely cumulative, corroborative, collateral,
or impeaching; and (4) the new evidence is probably true and will probably bring
about a different result on another trial. Keeter, 74 S.W.3d at 36–37. A movant’s
failure to establish any of these four requirements warrants the denial of the motion
for new trial. Delamora v. State, 128 S.W.3d 344, 354 (Tex. App.—Austin 2004, pet.
ref’d). 
          The credibility of the witnesses presented in a motion for new trial and the
probable truth of the new evidence are matters to be determined by the trial court. 
See Etter v. State, 679 S.W.2d 511, 515 (Tex. Crim. App. 1984). Should it appear to
the trial court that, under the circumstances of the case, the weight or credibility of
the new evidence is not such that it would probably bring about a different result in
a new trial, it is within the discretion of the trial court to deny the motion. Jones v.
State, 711 S.W. 2d 35, 37 (Tex. Crim. App. 1986). 
B.      Discussion
          After review of the record, we conclude that the trial court did not abuse its
discretion in finding that appellant failed to meet his burden to establish all four
Keeter requirements.
          We first note that appellant did not allege, either in his motion for new trial or
at the hearing on his motion, that the failure to discover this evidence before trial was
not due to a lack of diligence, a necessary finding under the second requirement of
Keeter. Nor did appellant provide any testimony or other evidence at the hearing
regarding his efforts, if any, to discover or to obtain Gonzalez’s and Cruz’s statements
before trial. There is therefore no pleading and no evidence that establishes that the
failure to discover the new evidence before trial was not due to a lack of diligence. 
Because appellant failed to plead or to prove the second requirement of Keeter, the
trial court could have reasonably concluded that he had failed to meet his burden as
to the requirement of diligence. See Burns v. State, 844 S.W.2d 934, 935 (Tex.
App.—Amarillo 1992, no pet.) (holding that there was no error in overruling motion
for new trial based on discovery of new evidence when appellant did not plead in
motion that failure to discover evidence was not due to lack of diligence); see also
Sanchez v. State, No. 11-05-00043-CR, 2006 WL 998181, at *6 (Tex.
App.—Eastland 2006, pet. ref’d) (memo op., not designated for publication) (holding
that appellant failed to meet burden as to Keeter requirement of diligence when he did
not plead in motion for new trial that failure to discover evidence was not due to lack
of diligence and he did not present any evidence on issue of diligence at hearing on
motion). 
          Likewise, considering the third requirement of Keeter, given the nature of the
testimony offered, the trial court could have reasonably concluded that the testimony
offered was merely impeaching or, in the case of Cruz, cumulative or corroborative 
and so was not a valid basis for the granting of a new trial. See Shafer v. State, 82
S.W.3d 553, 557 (Tex. App.—San Antonio 2002, pet. ref’d) (holding that when only
purpose of new evidence was to impeach witness’s trial testimony, such was “an
impermissible reason to grant a second trial based on new evidence”) (citing Moore
v. State, 882 S.W.2d 844, 849 (Tex. Crim. App. 1994)). 
          Gonzalez’s proffered testimony, which dealt with a statement made by
Martinez and the overheard conversation between Martinez and the Lopezes, was
entirely hearsay, admissible only for the purposes of impeaching Martinez, and
therefore would not be a proper basis for the grant of a new trial. See Tex. R. Evid.
801(d), 802, 613(a); Keeter, 74 S.W.3d at 37; Shafer, 82 S.W.3d at 557; Blackmon
v. State, 926 S.W.2d 399, 403 (Tex. App.—Waco 1996, pet. ref’d) (noting that
hearsay testimony was admissible only for impeachment and therefore trial court did
not abuse discretion in denying new trial); see, e.g., Bookman v. State, No. 01-04-01145-CR, 2007 WL 1018648, at *10 (Tex. App.—Houston [1st Dist.] Apr. 5, 2007,
no pet.) (memo op., not designated for publication) (holding that new evidence
consisting of alleged admissions of State’s witness that he had lied at trial was merely
attempt to impeach witness and trial court did not abuse discretion in denying motion
for new trial). 
 

          Similarly, Cruz’s testimony that he and Martinez had left the meeting area for
the party at 11:45 p.m. and that, when he arrived, the fight was over, was offered to 
impeach the testimony of Martinez and his wife that Martinez had arrived at the party
between 11:30 and 11:45 and to impeach the testimony of the complainant, Martinez,
and Salazar, who each said that Martinez had witnessed the fight. Because its sole
purpose was to impeach the State’s witnesses, this evidence would not have
supported the grant of a new trial. See Shafer, 82 S.W.3d at 557; Keeter, 74 S.W.3d
at 37; Jones, 711 S.W.2d at 39 (affirming denial of motion for new trial and holding
that testimony of new witness, that State’s witness wrongly testified that he saw new
witness on evening of crime, was only impeachment evidence). Moreover, Cruz’s
testimony was merely cumulative and corroborative of testimony already before the
jury—that of appellant, Fuentes, and Tapia—that Martinez had not been present at
the scene of the fight at the time that it had occurred and so would not have provided
a basis for the grant of a new trial for that reason, as well. See Etter, 679 S.W.2d at
515 (holding that testimony of co-defendant was merely cumulative and corroborative
of appellant’s testimony and new trial was not required); Kennerson, 984 S.W.2d at
708 (holding that new testimony from barber that appellant had facial hair two days
after offense did not merit granting of motion for new trial; noting that evidence was
merely cumulative of testimony regarding appellant’s facial hair already before jury); 
Decker v State, 734 S.W.2d 393, 395 (Tex. App.—Houston [1st Dist.] 1987, pet.
ref’d) (concluding that newly available testimony that simply corroborated appellant’s
testimony that he did not use gun during offense did not warrant granting of new
trial).
          The trial court therefore could have reasonably concluded that appellant’s new
evidence did not satisfy the third requirement under Keeter.


 
          Finally, the trial court also could have reasonably concluded that appellant
failed to show that the testimony of Cruz and Gonzalez was “probably true” or that
their testimony would probably bring about a different result in a new trial, as
required by the fourth element under Keeter. The trial court is the sole arbitrator of
the credibility of the witnesses and evidence offered. Charles, 146 S.W.3d at 208;
Etter, 679 S.W.2d at 515. In order to find evidence “probably true,” a trial court must
determine that the whole record presents no good cause to doubt the credibility of the
witness whose testimony constitutes new evidence, either by reason of the facts
proven at the trial or by the controverting affidavits on the motion or otherwise.
Henderson v. State, 82 S.W.3d 750, 755 (Tex. App.—Corpus Christi 2002, pet. ref’d)
(citing Jones, 711 S.W.2d at 37 n.4). Conversely, a trial court can find new evidence
is probably not true when that evidence contradicts either the mass of reliable
testimony at trial or the defendant’s own testimony, or the new testimony is
inconsistent or otherwise inherently suspect. Id. (citing Jones, 711 S.W.2d at 37 n.4).
In the present case, the trial court specifically found “both witnesses who testified .
. . not credible.” Reviewing the record as a whole, in the light most favorable to the
trial court’s decision, Charles,146 S.W.3d at 208, we conclude that the record does
not demonstrate a clear abuse of discretion in the trial court’s finding that the
testimony was not credible and therefore that the new evidence was not “probably
true.” Furthermore, given that two other witnesses, in addition to appellant, had
already testified before the jury that Martinez had not been present to witness the
fight, the trial court could have reasonably concluded that Cruz’s and Martinez’s
testimony would not probably bring about a different result in a new trial. See Jones,
711 S.W. 2d at 37. Therefore, the trial court could have reasonably found that
appellant did not meet the fourth element under Keeter. 
          We hold that the trial court did not abuse its discretion in denying appellant’s
motion for new trial and overrule appellant’s third point of error.
Jury Charge
          In his fourth point of error, appellant contends that the trial court erred by
submitting a jury charge that denied appellant the right to a fair trial. He claims that
the trial court’s charge “misled the jury because it was vague, hopelessly confusing,
internally contradictory, failed to properly state required elements and definitions of
the Law, and failed to apply self-defense to the Offense contained in Paragraph 2 of
the charge.” 
          In analyzing a jury-charge issue, our first duty is to decide if error exists.
Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). Only if we find
error do we then consider whether an objection to the charge was made and analyze
for harm. Id.; see also Warner v. State, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008)
(“The failure to preserve jury-charge error is not a bar to appellate review, but rather
it establishes the degree of harm necessary for reversal.”). If jury-charge error exists
to which a timely objection was lodged, then reversal is required if the record
demonstrates “some harm” to the defendant because of the error. Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1984). If jury-charge error exists to which no
objection was lodged, we may not reverse on account of such error unless the error
was so egregious and created such harm that appellant was denied a fair trial. 
Warner, 245 S.W.3d at 461; Almanza, 686 S.W.2d at 171. In order to determine
egregious harm, we examine “the entire jury charge, the state of the evidence,
including the contested issues and weight of probative evidence, the argument of
counsel and any other relevant information revealed by the record of the trial as a
whole.” Almanza, 686 S.W.2d at 171. “The appellant must have suffered actual,
rather than theoretical, harm.” Warner, 245 S.W.3d at 461. 
A.      Jury confusion
          The jury’s confusion in this case was evident, appellant contends, by the
multiple notes to the trial court during deliberation and the several announcements
that it was deadlocked. Appellant argues that the trial court erred by charging the jury
in an “either, or” manner, thereby presenting the jury with a hopelessly confusing task
in determining guilt or innocence. 
          Presumably, appellant’s aversion to “charging the jury in an ‘either, or’
manner” refers to the fact that the jury could convict appellant of a single charge of
aggravated assault if it found that he committed either of the following acts: (1)
unlawfully, intentionally and knowingly caused bodily injury to the complainant by
using a deadly weapon or (2) unlawfully and recklessly caused serious bodily injury
to the complainant by throwing a bottle in his direction. However, the Court of
Criminal Appeals has spoken clearly on that question. Although the jury must agree
that a defendant committed one specific crime, it need not unanimously find that a
defendant committed that crime in one specific way or even with one specific act. 
Landrian, 268 S.W.3d at 542.
          Accordingly, we hold that the trial court committed no reversible error by
charging the jury in such a manner.
B.      Transferred intent
          Appellant argues that the transferred intent instruction


 likely caused confusion
among the jurors because it did not seem to fit the evidence. “No evidence was
presented to the jury to show that appellant intentionally or knowingly ‘threw’ the
bottle at Luis Miguel and missed, hitting Luis Brizuela instead,” appellant states. 
          While some evidence was presented suggesting that appellant intentionally
threw the bottle directly at the complainant, the State accurately points to other
evidence supporting the transferred intent charge. For instance, Officer Le testified
that the complainant told him that appellant had attempted to hit Miguel with the
bottle, but had hit the complainant instead. Also, Officer Phillip Guerrero testified
that the complainant’s original complaint stated that appellant had attempted to throw
the bottle at Miguel, but had accidentally hit the complainant with the bottle. Finally,
in his original statement to police, Martinez said appellant had thrown the bottle at
Miguel, but had instead hit the complainant. 
          Transferred intent “is raised when there is evidence a defendant with the
required culpable mental state intends to injure or harm a specific person but injures
or harms a different person . . . [.] ” Manrique v. State, 994 S.W.2d 640, 647 (Tex.
Crim. App. 1999) (McCormick, J., concurring); see Tex. Penal Code Ann.
§ 6.04(b)(2) (Vernon 2003) (“A person is nevertheless criminally responsible for
causing a result if the only difference between what actually occurred and what he
desired, contemplated, or risked is that . . . a different person or property was injured,
harmed, or otherwise affected.”). 
          Evidence at trial raised the issue of whether appellant, acting intentionally or
knowingly, used a deadly weapon, a bottle, intending to cause bodily injury to
Miguel, but injuring the complainant. Because there was evidence supporting the
granting of a charge on transferred intent, we hold that the trial court did not err in
giving such a charge.



C.      Self-defense
          Appellant next challenges the trial court’s charge because (1) the trial court
erred by not including appellant’s requested instruction on self-defense regarding
paragraph two of the indictment and (2) in the self-defense instruction for paragraph
one of the indictment, the trial court included the notion of “deadly force,” and not
“necessary force” as well. 
          1.       Self-defense instruction as to reckless injury alleged in paragraph
two 
          Self-defense is not available to a defendant in a prosecution for recklessly
injuring an innocent third person. See Tex. Penal Code Ann. § 9.05 (Vernon 2003)
(“Even though an actor is justified under this chapter in threatening or using deadly
force against another, if in doing so he also recklessly injures or kills an innocent
third person, the justification afforded by this chapter is unavailable in a prosecution
for the reckless injury or killing of the innocent third person”); Hayes v. State, 161
S.W.3d 507, 508 n.3 (Tex. Crim. App. 2005). Self-defense requires intentional
conduct, and so one cannot “recklessly” act in self-defense. Tex. Penal Code Ann.
§9.31 (Vernon Supp. 2008); Martinez v. State, 16 S.W.3d 845, 848 (Tex.
App.—Houston [1st Dist.] 2000, pet. ref’d); see Fuller v. State, No. 01-06-01077-CR,
2008 WL 4427653, at *4 (Tex. App.—Houston [1st Dist.] Oct. 2, 2008, no pet.)
(memo op., not designated for publication) (holding that jury could not have found
that appellant acted in defense of self after determining that he acted recklessly
because self-defense does not apply to reckless act). 
          Paragraph two of the indictment charged appellant with unlawfully and
recklessly causing serious bodily injury to the complainant by throwing a bottle in the
direction of the complainant. Therefore, self-defense—or in this case, deadly force
in defense of person—was not available to appellant as a legal defense for the
conduct with which appellant was charged in paragraph two. See Tex. Penal Code
Ann. § 9.05; Hayes, 161 S.W.3d at 508 n.3. There is therefore no error in the court’s
failure to provide a jury instruction on deadly force in defense of person as to
paragraph two of the indictment. 
          2.       “Deadly force” instruction as to paragraph one
          Regarding paragraph one of the indictment, appellant argues that by allowing
the jury to consider only whether appellant was justified in using deadly force, rather
than “the ordinary ‘self-defense’ charge,” the charge improperly commented on the
evidence. See Tex. Penal Code Ann. §§ 9.31(a), 9.32 (Vernon Supp. 2008) (self-defense and deadly force in defense of person, respectively). Further, appellant
contends that, had the trial court allowed the jury to consider “necessary force,” the
jury could have found that appellant did not use deadly force, but used reasonable,
necessary force in hitting Miguel with the beer bottle in self-defense. Finally,
appellant objects to the trial court’s instruction to consider, in determining whether
appellant was reasonable in using deadly force, “the facts and circumstances
surrounding his relationship with Luis Brizuela prior to the incident.” (Emphasis in
original.) 
          In order to determine whether the trial court should have included an
application paragraph regarding non-deadly, “necessary” force under section 9.31
(self-defense), rather than the given instruction regarding deadly force under section
9.32 (deadly force in defense of person), a reviewing court must first decide if there
was any evidence that the force used by appellant was not deadly force. Denman v.
State, 193 S.W.3d 129, 134 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d). For
appellant to be entitled to a non-deadly-force instruction, there must be evidence that
the instrument used—in this case, a bottle—was not capable of causing death or
serious bodily injury in the manner of its use or intended use. See Ferrel v. State, 55
S.W.3d 586, 591–92 (Tex. Crim. App. 2001). Under this standard, we must look at
the end result of the act and, if the facts are such that the complainant suffered serious
bodily injury or death, then, by definition, the force used was deadly, and an
instruction under section 9.31 is not applicable to the case. Id. at 592.
          It is clear that the complainant suffered serious bodily injury—the loss of his
eye. Accordingly, appellant necessarily used deadly force and so was not entitled to
an instruction on non-deadly force. See Denman, 193 S.W.3d at 135. For the same
reasons, the trial court properly allowed the jury to consider only whether appellant
was justified in using deadly force and did not comment on the evidence in so doing.
          Additionally, appellant objects to the fact that, as part of the deadly force
charge, the trial court gave the following instruction:
You are instructed that you may consider all relevant facts and
circumstances surrounding the offense, if any, and the previous
relationship existing between the accused and [the complainant],
together with all relevant facts and circumstances going to show the
condition of the mind of the accused at the time of the offense, if any.
 
Appellant does not complain on appeal that such an instruction should not have been
given at all, but rather challenges the wording of the instruction, arguing that the trial
court should have instructed the jury to consider appellant’s relationship with Miguel,
rather than the relationship between appellant and the complainant.
          This portion of the charge arises from the provisions of Texas Code of Criminal
Procedure article 38.36(a), which reads, “In all prosecutions for murder, the state or
the defendant shall be permitted to offer testimony as to all relevant facts and
circumstances surrounding the killing and the previous relationship existing between
the accused and the deceased, together with all relevant facts and circumstances going
to show the condition of the mind of the accused at the time of the offense.” Tex.
Code Crim. Proc. Ann. art. 38.36(a) (Vernon 2005). The plain language of article
38.36(a) dictates that the “previous relationship” that the jury may consider under
such article is that between the defendant and the complainant of the offense. See id. 
Therefore, the trial court did not err in failing to instruct the jury that it could consider
the previous relationship between appellant and Miguel.


 
D.      Resolution
          We hold that the trial court did not err in (1) charging the jury in an “either, or”
manner, (2) providing a transferred intent instruction, (3) not including a deadly force
instruction as to paragraph two, (4) providing an instruction on deadly force, rather
than necessary force, and (5) not providing an article 38.36(a) instruction that would
have permitted the jury to consider the previous relationship between appellant and
Miguel. We overrule appellant’s fourth point of error.
Jury Coercion
          In his fifth point of error, appellant argues that the trial court committed
reversible error by improperly coercing the jury through the cumulative effect of its
conduct including hostile communications to the jury, submission of an Allen


 charge
in the face of the jury’s claiming to be deadlocked, and improper refusal to declare
a mistrial. Appellant contends that such jury coercion denied him the right to a fair
and impartial trial, guaranteed by the Sixth Amendment to the U.S. Constitution and
Article V, Section 10, of the Texas Constitution. See U.S. Const. amend. VI; Tex.
Const. art. V, § 10.
A.      Allen charge and hostile communications
          Appellant argues that the trial court improperly coerced the jury by giving it an
Allen charge and engaging in “hostile communications.” The Allen charge came after
the jury had sent at least half a dozen notes, including one saying that it was
deadlocked. Appellant objected to the Allen charge on the ground that giving that
“charge this early in their deliberations is coercive and may result in an unfair,
compromised verdict.” Appellant also objected to the manner in which the court
responded to one of the jury notes, although he did not object to the content of the
response. Appellant did not make any objection below that the cumulative effect of
the trial court’s communications coerced the jury.
          1.       Standard of review
          An Allen charge is an instruction given to a deadlocked jury to continue
deliberating. Allen v. United States, 164 U.S. 492, 501, 17 S. Ct. 154, 157 (1896). 
The use of such a charge has long been sanctioned by the Supreme Court and the
Texas Court of Criminal Appeals. See Howard v. State, 941 S.W.2d 102, 123 (Tex.
Crim. App. 1996). “The primary inquiry to determine the propriety of an Allen charge
. . . is its coercive effect on juror deliberation ‘in its context and under all
circumstances.’” Id. 
          2.       Discussion 
           In the instant case, the Allen charge included very similar standard language
to that in Arrevalo v. State, which was held not to be coercive. 489 S.W.2d 569, 571
(Tex. Crim. App. 1973). The charge in Arrevalo was a fairly standard Allen charge. 
Id. It informed the jury that the consequences of a hung jury were a mistrial and a
probable retrial in which a future jury would be presented with the same evidence. 
Id. It also requested that the jurors continue deliberating “in an effort to arrive at a
verdict which is acceptable to all members of the jury.” Id. (Emphasis added).          In the charge at issue, the trial court arguably made even more explicit than in
Arrevalo that jurors should remain true to their personal convictions, stating: “You
are requested to continue deliberations in an effort to arrive at a verdict that is
acceptable to all members of the jury, if you can do so without doing violence to your
conscience.” (Emphasis added.) Moreover, the timing and circumstances of the
charge were not coercive. The trial court did not provide the Allen charge until after
it had received numerous notes from the jury, including one indicating that the jury
was deadlocked. See Loving v. State, 947 S.W.2d 614, 620 (Tex. App.—Austin 1997,
no pet.) (holding that Allen charge given after fewer than five hours of deliberation,
and before jury had indicated it was deadlocked, was not error). We hold that the
Allen charge given, “in its context and under all circumstances,” was not coercive. 
          Appellant also argues that the cumulative effect of the trial court’s numerous
instructions to the jury was coercive. Appellant did not make any such objection to
the trial court and so has not preserved such complaint for appellate review. See Tex.
R. App. P. 33.1(a)(1). However, because appellant did make one objection to one
note, we will consider the trial court’s actions as to all the notes. 
          The jury sent out several notes, both substantive and logistical in nature. The
appellate record does not clearly reflect all of the times and dates of the jury’s notes
and the trial court’s responses or the exact order in which they were sent. 
Nonetheless, because the accounts by appellant and the State do not seem to
contradict each other materially, we delineate and address appellant’s version of the
exchange between the jury and the trial court. 
          The jury first asked some questions, requesting the opportunity to read
appellant’s testimony. The trial court responded by directing the court reporter to
read back the requested testimony that the trial court believed answered “both of the
jury’s questions.” The jury later requested a copy of the indictment. The court
responded, stating that:
The language of the indictment is contained in the charge. Paragraph 1
of the indictment alleges that Mr. Landrian intentionally or knowingly
caused bodily injury to Luis Brizuela by using a deadly weapon, namely,
a bottle. Paragraph 2 of the indictment alleges that Mr. Landrian
recklessly caused serious bodily injury to Luis Brizuela by throwing a
bottle in the direction of Mr. Brizuela. Read the charge and continue to
deliberate.
The jury continued deliberating and then asked, “Do we base our decision only on the
evidence presented or may we apply our collective common sense to the evidence
presented?” The court again answered, “READ THE CHARGE AND CONTINUE
TO DELIBERATE.” The jury later asked two questions about the throwing of the
bottle, one related to burden of proof, and the other to transferred intent. To both
inquiries, the court responded, “READ THE CHARGE AND CONTINUE TO
DELIBERATE.” 
          After more deliberation, the jury said that it was deadlocked. The trial court
then read the jury the Allen charge. The jury later sent another note saying that it was
“hopelessly deadlocked without an answer to the common sense question.” Before
the end of that day, the jury sent two additional notes asking whether there was a
typographical error in the charge, and the trial court answered in the negative. 
Finally, the jury sent a note asking, “Can we apply self-defense to paragraph II of the
indictment?” The court answered, “READ THE CHARGE AND CONTINUE TO
DELIBERATE.” Distinct from the previous instructions with the same messages, the
“Read the charge” portion of the instruction was written in a font about triple the size
of the “and continue to deliberate” portion and was followed by three exclamation
points. 
          After writing the instruction, but before giving it to the jury, the court
addressed appellant’s objection to that instruction, asking, “The Defense is objecting
to the size of my font, right?” In response, appellant’s counsel stated:
I’m objecting that the way that the Court has written this response is
suggestive to the jury that he’s upset with them. It’s a comment on their
deliberations and I believe that it’s coercive to the jury and so I object
to that. I don’t object to the answer. I just object to the way the Court
has exclamated and written the answer.
      
The trial court denied that objection “as being silly.” 
          The trial court did not abuse its discretion by this ruling. The jurors could have
reasonably perceived that the trial court was frustrated by the repeated inquiries
whose answers could be found within the jury charge. However, the trial court did
not in any way convey in that jury instruction its opinion of the merits of the case or
favor one side over the other. Nor did any of the notes improperly pressure the jury
into returning a verdict. See Arrevalo, 489 S.W.2d at 571.  
          We hold that the notes to the jury, including the Allen charge, did not
improperly coerce the jury into rendering a verdict. We overrule this portion of
appellant’s fifth point of error. 
B.      Denial of motion for mistrial
          After the jury had sent a note saying it was deadlocked, the trial court
contemplated reading the jury an Allen charge. Before it did so, the trial court asked
appellant’s counsel, out of the presence of the jury, if he wanted to comment. After
reviewing the proposed Allen charge, appellant moved for a mistrial on the grounds
that the Allen charge would be “coercive and violates the province of the jury.” The
court denied that motion. Appellant contends that the trial court abused its discretion
by overruling his motion for mistrial. 
          1.       Standard of review
          Whether a jury should be dismissed and a mistrial ordered is a matter within
the sound discretion of the trial court and, absent an abuse of that discretion, there is
no error. Tex. Code Crim. Proc. Ann. art. 36. 31 (Vernon 2006) (“After the cause
is submitted to the jury, it may be discharged when it cannot agree and both parties
consent to its discharge; or the court may in its discretion discharge it where it has
been kept together for such time as to render it altogether improbable that it can
agree.”); DeLuna v. State, 711 S.W.2d 44, 48 (Tex. Crim. App. 1986); Love v. State,
627 S.W.2d 457, 458 (Tex. App.—Houston [1st Dist.] 1981, no pet.). In deciding
whether the trial court abused its discretion in not ordering a mistrial and discharging
a jury, it is appropriate for the appellate court to consider the amount of time that the
jury deliberated. Love, 627 S.W.2d at 458. 
          2.       Discussion
          Based on the number of witnesses and issues to resolve, as well as the length
of the trial compared with the length of jury deliberation, the trial court did not abuse
its discretion in denying appellant’s motion for mistrial. The guilt-innocence phase
of the trial took place over the course of three days: June 22–24, 2005. The testimony
presented came from more than a dozen witnesses. The trial court’s charge to the jury
included several issues upon which it had to agree, including an instruction on
transferred intent, self-defense, and a special “deadly weapon” issue. 
          The trial court could have concluded that granting a mistrial would have been
premature. As appellant’s counsel himself noted in his objection to the Allen charge,
the jury had been deliberating fewer than five hours. The period of time that the jury
deliberated was not so disproportionate to the length of the trial as to require the
jury’s dismissal and a declaration of a mistrial. See id. 458–59 (holding that trial
court did not abuse its discretion in refusing to declare mistrial when jury deliberated
for approximately six hours after approximately two-hour trial). Accordingly, we
hold that the trial court did not abuse its discretion in instructing the jurors to
continue their deliberations.
          For the aforementioned reasons, we overrule the balance of appellant’s fifth
point of error.
Conclusion
          We affirm the judgment of the trial court. 
 
 
Tim Taft
Justice
  
Panel consists of Justices Taft, Jennings, and Alcala.
 
Do not publish. See Tex. R. App. P. 47.2(b).